UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

          **MEMORANDUM & ORDER**
 v.          21-CR-308 (WFK)

JASON RAYFORD,

     Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**: On December 9, 2021, Defendant Jason Rayford ("Defendant") waived indictment and pled guilty to Count One of a three-count Superseding Information, charging him with robbing a bank and, in so doing, putting the lives of others in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. §§ 2113(a) and (d). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 77 months of imprisonment followed by two years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00, forfeiture in accordance with the Order of Forfeiture, and restitution in the amount of $1,000.00.

## I. Background

The Federal Bureau of Investigation ("FBI") led the investigation into the instant offense. Presentence Investigation Report ("PSR") ¶ 4, ECF No. 27.

On January 28, 2021, Defendant entered a Chase Bank in Brooklyn, New York, approached the teller with what appeared to be a firearm, and demanded money. *Id.* ¶ 5. The teller then handed over $1,000.00. *Id.* Defendant fled on foot before agents of the FBI and officers of the New York City Police Department arrived at the scene. *Id.*

On April 15, 2021, an FBI agent interviewed Defendant at Rikers Island Prison Complex, where Defendant was in custody following the robbery of a Home Depot store in February 2021. *Id.* ¶ 9. After being informed of and waiving his *Miranda* rights, Defendant admitted to the January 28, 2021 Robbery of the Chase Bank. *Id.* Defendant stated he used a fake firearm during the robbery. *Id.* The FBI agent also questioned Defendant about three other robberies of Chase Bank

1

branches, which took place on September 2, 2016, January 7, 2021, and January 15, 2021. *Id.* ¶ 10. Defendant admitted to the other two January 2021 attempted robberies. *Id.* While Defendant confirmed he was in the surveillance footage from the 2016 robbery, he stated he could not recall any details about that incident. *Id.*

On April 16, 2021, the Government filed a Complaint against Defendant, charging him with bank robbery in violation of 18 U.S.C. § 2113(a). ECF No. 1.

On June 4, 2021, the Government filed a single-count Indictment charging Defendant with bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). ECF No. 4.

On December 9, 2021, Defendant waived indictment and pled guilty to Count One of a three-count Superseding Information. Plea Agreement ¶ 1, ECF No. 22. Count One charges Defendant with bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). Superseding Information ¶ 1, ECF No. 21. The other two counts of the Superseding Information charge Defendant in connection with the aforementioned attempted robberies of the Chase Banks on January 7, 2021 and January 15, 2021, which Defendant admitted to in his interview with the FBI. Superseding Information ¶¶ 2-3; PSR ¶ 10. As part of his plea agreement, Defendant agreed the Court could consider at sentencing these two other attempted robberies, which are not factored into Defendant's Guidelines calculation. Plea Agreement ¶ 2; PSR ¶ 10. Defendant agreed not appeal or otherwise challenge his conviction or sentence if the Court imposes a term of imprisonment at or below 105 months. Plea Agreement ¶ 4.

Defendant has been incarcerated at the Metropolitan Detention Center in Brooklyn since June 10, 2021. PSR ¶ 112.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

    1.    Family and Personal Background

Defendant was born on December 18, 1972, in Philadelphia, Pennsylvania, to Norman and Katherine Rayford. PSR. ¶ 105. Defendant's father was an early unionist who, among others, was responsible for the early organization of District 1199C, an affiliate of the national Union of Hospital and Health Care Employees, AFSCME, AFL-CIO. *Id.* ¶¶ 106, 106 n. 2. On August 28, 1972, while Defendant's mother was pregnant with Defendant, Defendant's father participated in

3

a strike with other union workers. *Id.* ¶¶ 106, 107. While at the picket line, Defendant' father was shot and killed by a hospital guard. *Id.* ¶ 106. Defendant's father's death sparked enormous outrage and backlash amongst health care works and social activists, and culminated in a march through the city of Philadelphia to the site of his death. *Id.* Because Defendant's father was killed on August 28, that day is now a paid holiday for all 1199C members and is known as Norman Rayford Day. *Id.*

Defendant lived with his mother in Philadelphia under he was 17 years old. *Id.* ¶ 113. When he was 17, his mother sent him to live in Texas with his uncle in order to have a male mentor in his life. *Id.* Defendant spent three years in Texas before moving back to Philadelphia. *Id.* Defendant moved to New York in 1994. *Id.*

Defendant's mother remains in Philadelphia and maintains a good relationship with Defendant. *Id.* ¶ 107. She is aware of the instant offense and supportive of Defendant. *Id.*

Defendant is not married and does not have any biological children. *Id.* ¶ 111. However, Defendant reported that his goddaughter, Niamani Belk, is like a daughter to him. *Id.* Ms. Belk, who was 21 years old at the time the PSR was filed, lives in Lexington, Kentucky. *Id.* Ms. Belk's biological father denied paternity and abandoned her, at which point Defendant assured Ms. Belk's mother that he would care for her, and has been a father figure to her ever since. *Id.*

2. Educational and Employment History

Defendant attended Sayre Middle School in Philadelphia, Pennsylvania. *Id.* ¶ 127. He then attended West Philadelphia High School for a few days before withdrawing and turning to drugs. *Id.* ¶ 126. As part of his evaluation with a forensic psychologist, Defendant reported that after he was hit by a car, he began having issues in school. Drob Report at 6, ECF No. 24-1. On

4

January 19, 2005, Defendant obtained his High School Equivalency Diploma while incarcerated in connection with another offense. *Id.* ¶ 125.

Defendant reported prior work experience as a cook, a busboy, a carpenter, and a butcher. *Id.* ¶ 129. According to Defendant, he also attended a building maintenance and management program in 2002. *Id.*

### 3. Prior Convictions

Defendant has 51 prior adult criminal convictions, PSR ¶¶ 28-78, and 21 prior arrests, PSR ¶¶ 83-103. His prior convictions include, *inter alia*, felony convictions for attempted criminal sale of a controlled substance in the third degree, bank robbery, and robbery in the third degree. *Id.* ¶¶ 38, 65-66; *see also* Probation Recommendation at 2, ECF No. 27-1.

### 4. Physical and Mental Health

When Defendant was 13, he was hit be a car going 30 miles per hour and suffered a broken leg and a damaged carotid artery, which is an artery that delivers blood to the brain and head. *Id.* ¶¶ 108, 115. Defendant began to suffer mini strokes and slur his speech following the accident. *Id.* During a subsequent hospital visit, Defendant underwent an operation which opened the artery in the back of his brain. *Id.* ¶ 115. He remained in the hospital following that operation for 30 days. *Id.* Defendant continues to suffer from headaches to this day. *Id.*

While serving a criminal sentence for another conviction, Defendant fell out of a van during transport and injured his left shoulder. *Id.* ¶ 116. Defendant did not receive proper medical attention. *Id.* Defendant also experienced lower back pain while in custody, and was told by medical staff at the corrections facility that he had arthritis. *Id.* While Defendant continues to suffer from lower back pain, he has received no care from medical staff at the Metropolitan Detention Center. *Id.*

As for mental health, Defendant became depressed after he was hit by the car, and was evaluated by a psychiatrist in 1985. *Id.* ¶ 117. An evaluation by a forensic psychologist, conducted prior to this sentencing, revealed Defendant suffers from various mental conditions. *Id.* ¶ 118. The psychologist report submitted with defense counsel's sentencing memorandum concludes "[t]here continues to be evidence of a mixed personality disorder with mixed, including paranoid, and turbulent features. Mr. Rayford has had very serious difficulties, controlling both his substance abuse and his impulsive and poorly thought through behavior." Drob Report at 13. It further notes Defendant "has yet to receive the adequate and sustained treatment necessary for his combined mental illness and substance abuse." *Id.* Defendant continues to suffer from depression and anxiety, and reported that his anxiety has worsened while in custody for the instant offense. PSR ¶ 120. Defendant also reported feeling paranoid. *Id.*

    5.   Substance Abuse

As a result of his depression, Defendant began using drugs in his youth. *Id.* ¶ 117. Defendant began using cocaine at age 14. *Id.* ¶ 121. He also has a history of marijuana and alcohol use. *Id.* ¶¶ 121, 123-24. According to the psychologist's report submitted with defense counsel's memorandum, Defendant also used heroin for a period of five to six months, but ceased regular use after overdosing from heroin that contained fentanyl. Drob Report at 5.

Defendant has participated in both inpatient and outpatient drug treatment programs. PSR ¶ 122-23.

    6.   Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved robbing a bank, and, in so doing, brandishing a dangerous weapon and putting the lives of those present at the bank at risk. *See supra* Part I. Defendant also admitted to targeting Chase Bank branches because they often hand over money, suggesting planning went into Defendant's offense. PSR ¶ 10. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant waived indictment and pled guilty to bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). This offense carries a maximum term of imprisonment of 25 years and no minimum term of imprisonment. 18 U.S.C. 2113(d). Defendant faces a maximum of five years of supervised release and no minimum term of supervised release. 18 U.S.C. § 3583(b)(1). If a condition of release is violated, Defendant may be sentenced to up to three years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 18 U.S.C. § 3583(e). Defendant is ineligible for probation because this offense is a Class B Felony. 18 U.S.C. § 3561(a)(1). Defendant faces a maximum fine in the amount of $250,000.00, 18 U.S.C.

7

§ 3571(b)(3), as well as a mandatory assessment of $100.00 per count, 18 U.S.C. § 3013. In addition, Defendant faces forfeiture in accordance with the Order of Forfeiture. ECF No. 32. Finally, pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution. While the victims had not returned their affidavits of loss as of the filing of the Presentence Investigation Report, PSR ¶ 12, both the Government and Probation recommend the Court impose restitution in the amount of $1,000.00, Probation Recommendation at 1; Government Memorandum ("Gov't Mem.") at 1, ECF No. 35.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 18 U.S.C. § 2113, as contained in Count One of the Superseding Information, is U.S.S.G. §2B3.1. U.S.S.G. §2B3.1(a) provides for a base offense level of 20. Because the property of a financial institution was taken, two levels are added pursuant to U.S.S.G. §2B3.1(b)(1). An additional three levels are added pursuant to U.S.S.G. §2B3.1(b)(2)(E) because a dangerous weapon was brandished or possessed. Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. This brings Defendant's total adjusted offense level to 22. All parties agree with these calculations. *See* Defense Sentencing Memorandum ("Def. Mem") at 1, ECF No. 34, Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 35; PSR ¶¶ 24-25; *see also* Plea Agreement ¶ 2.

As noted previously, Defendant has numerous criminal convictions. Defendant's prior convictions result in a criminal history score of 11. U.S.S.G. §§4A1.1, 4A1.2; PSR ¶ 70. This

8

results in a criminal history category of V. U.S.S.G. §5A. All parties agree with this calculation. PSR ¶ 80; Def. Mem. at 1; Gov't Mem. at 2.

A total adjusted offense level of 22 and a criminal history category of V result in a Guidelines imprisonment range of between 77 and 96 months. U.S.S.G. §5A. All parties agree with this calculation. PSR ¶ 134; Def. Mem. at 1; Gov't Mem. at 2.

That said, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a bottom-of-the-Guidelines sentence of 77 months of imprisonment followed by two years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 27-1. Probation also recommends restitution in the amount of $1,000.00 owed to the victim bank due immediately and payable at a rate of $25.00 per quarter while in custody, and at a rate of 10% of gross monthly income while on supervised release. *Id.* Probation also recommends payment of the $100.00 special assessment. *Id.* at 2. Probation does not recommend the Court impose a fine, as Defendant appears unable to pay. *Id.* at 3.

Probation argues a sentence of 77 months is warranted because "defendant has been engaging in criminal conduct since age seventeen" and has an inordinate number or prior arrests and convictions. *Id.* at 3. Probation notes, "[d]espite receiving an extended custodial term on previous bank robberies, [Defendant] returned to committing robberies upon his release from federal custody" and "does not seem to be deterred from engaging in criminal conduct." *Id.*

Defense counsel requests a downward variance/departure from the Guidelines. Def. Mem. at 3-4. Defense counsel argues a sentence below the Guidelines range is warranted because of Defendant's "diminished capacity" while committing the instant offense. Def. Mem. at 3. Defense counsel, relying on a report prepared by Dr. Sanford L. Drob and attached to defense counsel's sentencing memorandum, notes, taking into account Defendant's "father's violent death and the

9

grieving of his widowed mother, to the head trauma and car accident that led to his ICU care as a teenager, it seems Mr. Rayford had little chance from the start." Def. Mem. at 3. Defense counsel highlight's Dr. Drob's conclusion that Defendant "has had very serious difficulties controlling both his substance abuse and his impulsive and poorly thought through behavior" and has "yet to receive the adequate and sustained treatment necessary for his combined mental illness and substance abuse." *Id.* (quoting Drob Report at 13).

Defense counsel directs the Court to the policy statement contained in U.S.S.G. §5K2.13, which permits a Court to downwardly depart from the Guidelines sentencing range where "the defendant committed the offense while suffering from a significantly reduced mental capacity." Def. Mem. at 3 (quoting U.S.S.G. §5K2.13). Defense counsel notes "Subsection B of USSG § 5K2.13 – lack of behavioral control –upon which we rely, as supported by Dr. Drob's conclusion that Mr. Rayford has had 'serious difficulties' controlling his 'impulsive and poorly thought through behavior' fit within USSG § 5K2.13(B)." *Id.* (quoting ECF No. 34-1).

Defense counsel also directs the Court to the policy statement contained in U.S.S.G. §5H1.3, which permits a Court to downwardly depart from the Guidelines where mental or emotional conditions are present to an unusual degree. *Id.* at 4. Defense counsel notes a reduction in prison time with "a more structured supervised release setting into which Mr. Rayford could transition to obtain the help he needs" would be consistent with this policy statement. *Id.*

Defense counsel also argues a below-Guidelines sentence is warranted because of the harsh conditions Defendant endured while incarcerated at the Metropolitan Detention Center during the COVID-19 pandemic. Def. Mem. at 4. Defense counsel cites caselaw for the proposition that the restrictions imposed on prisoners during the pandemic have made sentences unusually harsh, and may be considered mitigating at sentencing. *Id.* (citing *United States v. Oquendo*, 13-CR-357,

2023WL199609, at *5 (S.D.N.Y. Jan. 17, 2023) (Failla, J.) and *United States v. Leonard Ely*, 16-CR-183, 2024WL1719826, at *6 (E.D.N.Y. Apr. 22, 2024) (Garaufis, J.)).

The Court has read and considered the letters submitted by Defendant's loved ones. ECF No. 23-2. These letters describe Defendant as a compassionate, respectful man who puts those around him first. *Id.* These letters also note Defendant is committed to making amends for his actions. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a Guidelines sentence of between 77 and 96 months of imprisonment. Gov't Mem. at 1. The Government also requests the Court order restitution in the amount of $1,000.00. *Id.* The Government argues a Guidelines sentence is warranted because it reflects the seriousness of Defendant's offense, which involved "threaten[ing] a bank teller with what appeared to be – and may have been – a gun" and "robbing the bank of $1,000, which was handed to the defendant by the teller." *Id.* at 3. The Government further asserts, "defendant's criminal history demonstrates his decades-long, unconcealed contempt for the justice system," highlighting in particular a prior conviction for bank robbery and the two attempted bank robberies, which Defendant confessed to. *Id.* The Government notes that, "[w]hile specific deterrence may not be an achievable goal in this case, general deterrence remains crucial. As explained in the PSR, the defendant chose to rob Chase Banks because they tended to give up money more readily than other institutions. A lengthy sentence will deter others inclined to make similarly chilling calculations before stealing money or property by force." *Id.* (internal citations omitted).

However, the Government "submits that it is fair for the Court to take into account the defendant's acceptance of responsibility, which is notable. Not only did the defendant admit his conduct and plead guilty to the January 28, 2021 bank robbery, he also admitted to two additional attempted bank robberies from January 2021, with which he had not yet been charged." *Id.* The

Government "also agrees with the defense counsel that the Court may consider the defendant's history of brain injury as a child and his mental-health and substance-abuse history in crafting a sentence." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defendant admitted to his involvement in two additional attempted robberies of Chase Bank branches in Brooklyn, New York. PSR ¶¶ 10, 149. While these attempted robberies are not properly considered for Guidelines calculations purposes, pursuant to the plea agreement the Court may consider these attempted robberies at sentencing. Plea Agreement ¶ 2. Pursuant to U.S.S.G. §5K2.21, these may constitute grounds for an upward departure. *See also* PSR ¶ 149.

As discussed above, *see supra* Part III.D, defense counsel suggests a downward departure may be appropriate here pursuant to the Policy Statement contained in U.S.S.G. §5K2.13, because of Defendant's diminished mental capacity at the time of the commission offense. Def. Mem. at 3. Defense counsel also directs the Court to the Policy Statement contained in U.S.S.G. §5H1.3. Def. Mem. at 4. This Policy Statement provides: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. §5H1.3. Defense counsel suggests Defendant's mental and emotional condition warrants the invocation of this Guidelines provision. Def. Mem. at 4.

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A, and both Probation and the Government recommend restitution in the amount of $1,000.00 for the victim bank, although Probation notes victims have not yet provided an affidavit of loss. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine any additional amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence 77 months of imprisonment to be followed by two years of supervised release with both standard and special conditions. Forfeiture is ordered in accordance with Order of Forfeiture at ECF No. 32. The Court also orders a $100.00 mandatory special assessment. Finally, the Court orders restitution in the amount of $1,000.00, with the payment schedule suggested by the Probation Department in its sentencing recommendation at ECF No. 27-1. This sentence is sufficient but no greater than necessary to

13

accomplish the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 27, as corrected herein, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

**s/ WFK**
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 10, 2024
Brooklyn, New York